**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAWUD HARRIS, a/k/a DAVID HARRIS** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 16-693** |
| | : | |
| **PENNSYLVANIA HIGHER EDUCATION** | : | |
| **ASSISTANCE AGENCY / AMERICAN** | : | |
| **EDUCATION SERVICES** | : | |
| | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                    **June 24, 2016**

Congress provides a remedy for consumers challenging an allegedly inaccurate credit report or negligent treatment of inaccurate information by credit reporting agencies through the Fair Credit Reporting Act. Almost by its definition, the Fair Credit Reporting Act is principally focused on the conduct of consumer reporting agencies. A company servicing loans is generally not a consumer reporting agency but a furnisher of data to a consumer reporting agency. A data furnisher, such as a lender, could be liable under the Fair Credit Reporting Act if it fails to investigate or modify inaccurate information after being notified by the consumer reporting agency of any dispute. The Pennsylvania Higher Education Assistance Agency servicing student loans is not a consumer reporting agency and, in the amended complaint we now address, cannot be held liable under the Fair Credit Reporting Act. Even assuming we allow the Plaintiff to again amend his complaint to sue a data furnisher, when the Plaintiff fails to allege filing a dispute with a consumer reporting agency but instead complained to the Consumer Financial Protection Bureau, which is not a credit reporting agency, we cannot allow the Plaintiff to amend his complaint again as such an amendment is futile. We accordingly grant the Defendant's

Motion to Dismiss and dismiss the amended complaint with prejudice in the accompanying Order.

## I.  Facts in the Amended Complaint[1]

Dawud Harris, a/k/a David Harris ("Harris"), sues the Pennsylvania Higher Education Assistance Agency/American Education Services[2] for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by "procedural negligent [sic] in the treatment of inaccurate or unverifiable information" and "fail[ing] to comply with the requirements of reinsertion of previously deleted materials and accordingly resulting in failure to notify [Harris] of any deletion/change/or alteration made to [his] credit report/score during the initial dispute/accusations of procedural negligence and coercive activity by PHEAA/AES."[3]

Harris focuses on student loans originating in 2005, 2006, and 2007 serviced by PHEAA.[4] In connection with the 2006 loan, Harris alleges PHEAA violated the FCRA for negligently and coercively acting in "collection of a debt [sic]."[5] In December 2008, PHEAA sent a final notice informing Harris of a $5,792.96 default on the loan.[6] The December 4, 2008 Final Notice told Harris, *inter alia*, "AES will report each individual loan to all nationwide consumer reporting agencies as a defaulted government debt. This may have a negative bearing on future applications for credit . . . and employment."[7] Despite default, Harris alleges PHEAA "certified and validated" another student loan in 2007.[8]

In July 2014, Harris applied for a personal loan at Philadelphia Federal Credit Union where he maintained an account.[9] The Credit Union denied the loan citing "serious delinquency"; "level of delinquency on accounts"; "number of accounts with delinquency"; and "lack of recent revolving account information."[10] The Credit Union based its decision "in whole

2

or in part" on information obtained from Experian, a consumer reporting agency, including Harris' credit score of 531 reported by Experian.[11]

Harris then filed a complaint with the Consumer Financial Protection Bureau ("CFPB") against PHEAA for "defendant's lack of responsiveness via mail or phone," and "foul play, initially alleging disability related financial abuse."[12] As a result of his complaint to the CFPB, Harris' credit score rose to 650 on a "Credit Karma" report.[13] On October 12, 2015, Harris learned PHEAA's response to his CFPB complaint "was not in [his] favor," allegedly leading to a Credit Karma credit score report of 613.[14]

Harris alleges as a result of his CFPB complaint in which he refers to "foul play" involving a separate litigation, PHEAA did not respond "for months" and retaliated against him in connection with "the initial ADA violation" by increasing interest rates on his loans because of this litigation.[15] Harris made another complaint to CFPB, and his credit score on Credit Karma rose to 647 in January 2016.[16]

In February 2016, PHEAA notified Harris as a result of his 96-month delinquency in payment on his student loans PHEAA would write off the loans and issue a Form 1099-C for the full amount due unless Harris made payment or entered into a payment plan.[17] On February 26, 2016, Harris alleges he filed for "disability discharge with the US Department of Education for Total and Permanent Disability due to [his] health condition."[18] Harris signed a "Total and Permanent Disability Private Loan Application" form on March 3, 2016.[19] Around this time, in March 2016, PHEAA sent Harris a letter requesting information on a name change.[20]

## II. Analysis

Harris alleges PHEAA violated § 1681i of the FCRA[21], is negligent in failing to comply with the FCRA under § 1681o,[22] and seeks the discharge, cancellation, and forgiveness of his loans, and a monetary sum of $30,000.

PHEAA moves to dismiss Harris' Amended Complaint arguing § 1681i of the FCRA applies only to consumer reporting agencies, and not PHEAA.[23] PHEAA asserts it is a "data furnisher" to which § 1681s-2[24] may apply and, even if Harris could again amend his Amended Complaint and attempt to bring an FCRA claim against PHEAA under § 1681s-2, his claim still fails.[25]

### A. Sections 1681i and 1681s-2 of the FCRA

Congress "crafted [the FCRA] to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner."[26] We construe the FCRA liberally to satisfy "consumer oriented objectives" including "the inability at times of the consumer to know he is being damaged by an adverse credit report," the lack of "access to the information in [his] file," the "difficulty in correcting inaccurate information," and "getting [his] version of a legitimate dispute recorded in ... [his] credit file."[27]

### 1. Section 1681i does not apply to PHEAA.

Section 1681i specifically describes the procedure to dispute the accuracy of information contained in a consumer's file at a consumer reporting agency. A "consumer reporting agency" is defined as:

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, *regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties*, and which uses any means or

facility of interstate commerce for the purpose of preparing or furnishing consumer reports.[28]

Section 1681i(a)(1)(A) requires a consumer reporting agency to investigate disputed information on a consumer's credit report within thirty (30) days of receiving notice of the dispute. If the consumer reporting agency determines the information to be inaccurate or incomplete, it must remove the item of information from the consumer's report or modify the information, and notify the furnisher of the information of  modification or deletion in the consumer's file.[29] If information is deleted from a consumer's file, it may not be "reinserted in the file by the consumer reporting agency unless the person who furnishes the information certifies that the information is complete and accurate."[30] If information is "reinserted," the consumer reporting agency must notify the consumer and provide other additional information.[31] There could be civil liability for negligent noncompliance.[32]

The FCRA's defines "consumer reporting agency" as "(1) The consumer reporting agency must act for monetary fees, dues, or on a cooperative non-profit basis; (2) it must regularly engage in whole or in part in gathering or evaluating information on consumers; (3) the purpose of such activity must be the distribution of information to third parties engaged in commerce; and (4) the agency must use a facility of interstate commerce to prepare or distribute the reports."[33] Harris fails to allege any facts PHEAA is a consumer reporting agency as defined by the FCRA. Even if Harris alleged these facts, PHEAA is not a consumer reporting agency.[34]

Harris argues AES is a "tradename" for PHEAA, PHEAA is attempting to "hide behind its tradename," AES must be joined under Federal Rule of Civil Procedure 19, and, as "joined," PHEAA is "not only a data-furnisher, but meets the definition it provides in response to the amended complaint as a consumer reporting agency as well . . .."[35] Harris' argument regarding PHEAA's "tradename" does nothing to change the absence of any allegations PHEAA or AES is

a consumer reporting agency under the FCRA. We grant PHEAA's motion and dismiss Harris' claim under §1681i.

### 2.  Harris fails to state a claim under § 1681s-2.

PHEAA concedes any FCRA action must be brought against it in its capacity as a "data furnisher" under 15 U.S.C. § 1681s-2(a) and (b).[36] PHEAA argues even assuming Harris attempts to bring a claim under §1681s-2, or we permit amendment to allow him to do so, it must be dismissed for failure to state a claim.

#### a.  *No private right of action under § 1681s-2(a).*

Subsection 2(a) imposes duties on "furnishers of information" to, *inter alia*, report accurate information, an ongoing duty to correct and update inaccurate information, and a duty to provide notice of dispute.[37] PHEAA correctly argues there is no private right of action under §1681s-2(a); only federal or state authorities may enforce this subsection.[38] Any claim under subsection 2(a) is accordingly dismissed.

#### b.  *Harris fails to state a claim under § 1681s-2(b).*

Subsection 2(b) imposes duties on "furnishers of information" when the consumer disputes the completeness or accuracy of information on a credit report.[39] When a furnisher receives notice from a credit reporting agency disputing the accuracy of credit information, the furnisher must conduct an investigation and follow procedures prescribed by § 1681s-2(b)(1)(A) through (E). Any investigation must be "'a reasonable investigation' of the records of the furnisher, 'to determine whether the disputed information can be verified.'"[40]

To state a claim under §1681s-2(b), Harris must plead he filed a notice of dispute with a consumer reporting agency; the consumer reporting agency notified the furnisher of information of the dispute; and the furnisher of information failed to investigate and modify the inaccurate

information.[41] Harris fails to allege the elements of the claim because he admittedly filed his complaints with the Consumer Financial Protection Bureau ("CFPB"), which is not a credit reporting agency. The CFPB is an independent executive agency established in the Federal Reserve System regulating "the offering and provisions of consumer financial products or services under federal consumer financial laws."[42] Harris also fails to sufficiently allege the final element in the claim because he neither asserts nor provides facts showing PHEAA failed to investigate his claim; he instead alleges PHEAA responded to the CFPB complaint with a ruling not in his favor.[43]

### B. Amending the Amended Complaint is futile

The Supreme Court instructs leave to amend a complaint "shall be freely given when justice so requires." [44] We may refuse a plaintiff's motion to amend in certain exceptions such as undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment.[45]

Harris, upon further amendment, could not sufficiently plead facts establishing a claim under §1981s-2(b) because the CFPB is not a consumer reporting agency.[46] Even if we grant Harris leave to again amend his complaint, he would not survive a motion to dismiss because he does not provide sufficient facts alleging he filed a complaint with a consumer reporting agency, which is the first required element of establishing a claim under § 1981s-2(b), or PHEAA failed to investigate any dispute filed with a consumer reporting agency.[47] In fact, Harris alleges PHEAA responded to his complaint to the CFPB.[48]

### III. Conclusion

We dismiss Harris' claim under 15 U.S.C. § 1681i with prejudice. As it applies only to consumer reporting agencies; PHEAA is not a consumer reporting agency. To the extent Harris claims PHEAA violated a duty as a furnisher of information under 15 U.S.C. § 1681s-2(a), we dismiss any such claim with prejudice because there is no private cause of action under this section. To the extent Harris claims PHEAA violated 15 U.S.C. § 1681s-2(b), we dismiss the complaint for failing to plead the elements required to maintain such a claim. We dismiss any claim under § 1681s-2(b) with prejudice because any additional pleading based on the facts already pled would be futile.

---

[1] The original complaint asserted violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §1201 *et seq.* against the Pennsylvania Higher Education Assistance Agency ("PHEAA") alleging "financial exploitation of a person with a disability" and "fabricating financial information on three promissory notes." *See* ECF Doc. No. 1-1. On February 19, 2016, we granted Plaintiff leave to proceed *in forma pauperis*, dismissed his ADA claim, and granted him leave to file an amended complaint no later than March 21, 2016 to state a plausible basis for a federal claim against PHEAA, or file state law claims in state court. *See* ECF Doc. No. 2. Plaintiff filed an Amended Complaint on March 15, 2016 (ECF Doc. No. 4).

[2] PHEAA is "a body corporate and politic constituting a public corporation and government instrumentality." 24 P.S. § 5101. Its purpose "shall be to improve the higher educational opportunities of persons who are residents of this State and who are attending approved institutions of higher education, in this State or elsewhere, by assisting them in meeting their expenses of higher education in accordance with the provisions of this act and by enabling the agency, lenders and postsecondary institutions to make loans available to students and parents for postsecondary education purposes." 24 P.S. § 5102. "American Education Services is a fictitious name owned" by PHEAA. *Keller v. GC Servs., L.P.*, No. 13-1654, 2013 WL 3213338, at *1 (E.D. Pa. June 26, 2013) (citing *Walker v. Am. Educ. Servs.*, No. 09–2276, 2010 WL 1687613, at * 1 (E.D.Pa. Apr.26, 2010)). PHEAA and American Education Services ("AES") move collectively to dismiss Harris' Amended Complaint. We refer to both entities collectively as "PHEAA." In its reply brief, PHEAA attaches its April 19, 2002 application with the Pennsylvania Department of State Corporation Bureau to register "American Education Services" as a fictitious name. *See* ECF Doc. No. 13-1. On a motion to dismiss, we may consider matters of public record if related to plaintiff's claim. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993).

[3] Amended Complaint ("Am. Compl.") at 4, Section III "Statement of Claim" (ECF Doc. No. 4). Harris alleges the penmanship on the student loans is not his, suggesting PHEAA "fabricated information" and the "promissory notes are questionable." *See* Am. Compl. at ¶¶ 1-2.

[4] Harris alleges FCRA violations arise from three "Keystone Extra" loans from "lender" PHEAA and "presumably granted by TERI." *Id.* at ¶ 4. "TERI" is not identified. Exhibits A, D, and "Extra Ex." attached to Am. Compl. at 15-17 (ECF Doc. No. 4).

[5] Am. Compl. at ¶ 1.

[6] *Id.* at ¶ 2. December 4, 2008 Final Notice attached as Exhibit B to Am.Compl. at 78 (ECF Doc. No. 4).

[7] Exhibit B to Am. Compl.

[8] Am. Compl. at ¶ 3.

[9] *Id.* at ¶ 6.

[10] *See* Exhibit F to Am. Compl. at 82 (ECF Doc. No. 4).

[11] *Id.*

[12] Am. Compl. at ¶ 6, and Exhibit G to Am. Compl. at 54 (ECF Doc. No. 4).

[13] *Id.*, and Exhibit G1 to Am. Compl. at 18 (ECF Doc. No. 4).

[14] *Id.* at ¶ 7, and Exhibits H and H1 to Am. Compl. at 34-51 (ECF Doc. No. 4). Harris alleges as of November 22, 2015, his credit score dropped to 613 and the 2006 PHEAA loan and a loan originating in 2005 from "Navient, formerly called Salle Mae [sic]" is reflected on the Credit Karma report. Am. Compl. at ¶ 7.

[15] Am. Compl. at ¶ 8. Harris refers to a litigation he identifies as "*Fairfax County, Va. et. Lee Pele v. PHEAA*." Mindful Harris is a *pro se* plaintiff, we conducted a Westlaw search, locating a case captioned *Pele v. Pennsylvania Higher Education Assistance Agency*, originating in the United States District Court for the Eastern District of Virginia at 53 F.Supp.3d 857 (E.D. Va. 2014) vacated by 628 F.App'x 870 (4th Cir. 2015). PHEAA filed a petition for certiorari to the United States Supreme Court. The issue there is whether PHEAA is entitled to Eleventh Amendment immunity in an action brought by plaintiff Pele against PHEAA for alleged violations of the FCRA. PHEAA does not argue immunity here.

To the extent the allegations at ¶ 8 relate to violations of the ADA, our February 19, 2016 Order (ECF Doc. No. 2) dismissed those claims, and Harris' Amended Complaint does not state an ADA claim.

[16]  Am. Compl. at ¶ 9.

[17]  *Id.* at ¶ 10.

[18]  *Id.* at ¶ 11.

[19]  *See* Exhibit "M" to Am. Compl. at 72-74. Prior to his February 2016 application to PHEAA for "Total and Permanent Disability," Harris applied for forbearance of all loans as creating "an undue hardship." *See* Am. Compl. at ¶ 13 and Exhibit "O" to Am. Compl. at 86. Harris alleges the loans "were not eligible for a forbearance according to the federal trade commission [sic]." Am. Compl. at ¶ 13.

[20]  *Id.* at ¶ 12 and Exhibit "N" to Am. Compl. at 85. In paragraph 14 of his Amended Complaint, Harris objects, among other things, to PHEAA's March 8, 2016 request for information regarding a name change. Notably, Harris held himself out under another name, signing PHEAA's "Total and Permanent Disability" application "Dawud Harris AKA David Harris" on March 3, 2016 (*see* Exhibit "M" to Am. Compl. at 73).

[21]  15 U.S.C. §1681i.

[22]  15 U.S.C. §1681o provides for civil liability for negligent noncompliance.

[23]  *See* PHEAA's Motion to Dismiss at 5-8 (ECF Doc. No. 6-1). A plaintiff in a civil action is required to plead a "short and plain statement of the claim" showing they are entitled to relief. Fed. R. Civ. Pro. 8(a)(2). Any "pleading offering only 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d. Cir. 2009) citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)). "Mere conclusory statements do not suffice. *Id.* A claim satisfies the plausibility standard when the facts alleged "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d. Cir. 2011) citing *Iqbal*, 556 U.S. at 678. Under 28 U.S.C. § 1915(e)(2)(B)(ii), when a plaintiff proceeds *in forma pauperis*, "the Court will construe his allegations liberally." *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d. Cir. 2011). The Third Circuit requires the following three step analysis when determining a 12(b)(6) motion: (1) The court must take notice of the elements a plaintiff must plead to state a claim; (2) the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d. Cir. 2010) (quoting *Iqbal*, 556 U.S. at 664); *See, Burtch*, 662 F.3d at 221; *Malleus v. George*, 641 F.3d 560, 563 (3d. Cir. 2011) (holding inquiry is normally broken into three parts: (1) identifying the elements of a claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded

components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.)

[24] 15 U.S.C. § 1681s-2.

[25] PHEAA's Motion at 8-11 (ECF Doc. No. 6-1).

[26] *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010) (quoting *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir.1995) (citations omitted)).

[27] *Id.* (quoting S.Rep. No. 91–517, at 3 (1969)).

[28] 15 U.S.C. § 1681a(f) (emphasis added).

[29] 15 U.S.C. § 1681i(a)(5)(A)(i)-(ii).

[30] 15 U.S.C. § 1681i(a)(5)(B)(i).

[31] 15 U.S.C. § 1681i(a)(5)(B)(ii)-(iii).

[32] Under §1681o(a), "any person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of (1) *any actual damages sustained by the consumer as a result of the failure*; and (2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court" (emphasis added).

Harris demands a variety of relief seeking: PHEAA "issue a 1099-C immediately . . . marked 'paid in full' on all private education loans w/o transfer to another agency of any kind, renaming the loan and notifying all Lender that such loans have been forgiven"; "no further action of any sort from PHEAA/AES"; "discharge for the year of 2015 for all private education loan debt owned by PHEAA/AES"; "a letter of apology" (*see* 4-5 at ECF Doc. No. 4); the cancellation, discharge and forgiveness of the student loans (*Id.* at 9); monetary award in the amount of $30,000 (*Id.*); additional money damages to be awarded to a non-party individual, non-party Community Legal Services, and non-party Community College of Philadelphia (*see* ¶ 17 of Response at ECF Doc. No.11); and "default ruling in his favor" (Addendum at ¶¶ 6, 9 ECF Doc. No. 12). With the exception of "*any actual damages sustained by the consumer as a result of the failure*" as provided by the FCRA, none of the requested relief is authorized. To the extent Harris requests default judgment, it is denied. Under Federal Rule of Civil Procedure 55, default judgment is granted "when a party against whom a judgment for affirmative relief is sought has fails to plead or otherwise defend, and that failure is shown by affidavit or otherwise." PHEAA responded to Harris' Amended Complaint by its motion to dismiss, and Rule 55 is not applicable.

[33] *Parker v. Commonwealth Fin. Servs., Inc.,* No. 08-372, 2008 WL 2246440, at *2 (M.D. Pa. May 30, 2008) (quoting *Todd v. Assoc. Credit Bureau, Inc.*, 451 F.Supp. 447, 448 (E.D. Pa. 1977), *aff'd* 578 F.2d 1376 (3d Cir. 1978), *cert. denied*, 439 U.S. 1068 (1979)); *see also* 15 U.S.C. § 1681a(f).

[34] *See* note 2, *supra*; *see also Ogunmokum v. Am. Educ. Servs./PHEAA*, No. 123-4403, 2014 WL 4724707 at *1, n. 6, *7 (E.D.N.Y Sept. 23, 2014) (discussing duties of PHEAA as a "furnisher" of information); *Quigley v. PHEAA*, No. 00-1661, 2000 WL 1721069, *2 (N.D. Cal. Nov. 8, 2000) (discussing PHEAA's liability as "furnisher" of information).

[35] Harris Response at 2-3 (ECF Doc. No. 11); and "Addendum" at 1-2 (ECF Doc. No. 12). Federal Rule of Civil Procedure 19 governs required joinder of parties. Failure to join a party under Rule 19 is a defense to a claim. *See* Fed.R.Civ.P. 12(b)(7). As set forth above, AES is a fictitious name of PHEAA and is a named defendant in this case. Rule 19 is inapplicable here and we deny Harris' request we "enforce" Rule 19.

[36] The terms "data furnisher" or "furnishers of information" are not defined by the FCRA, "but generally includes any entity that reports information to a [consumer reporting agency] which is relevant to a consumer's credit rating." *Paredes v. Sallie Mae*, No. 11-2470, 2011 WL 5599605, at *4 (D.N.J. Nov. 16, 2011) (footnote omitted) (citing *Burrell v. DFS Servs., LLC*, 753 F.Supp. 2d 438, 446 (D.N.J. 2010)).

[37] 15 U.S.C. § 1681s-2(a)(1)(A)-(B), (a)(2), (a)(3).

[38] 15 U.S.C. § 1681s-2(d); *see also Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 34 (3d Cir. 2011) (citing 15 U.S.C. § 1681s–2(c), (d); *Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1059 (9th Cir. 2002)); *Cicala v. Trans Union, LLC*, Nos. 15-6790, 15-6801, 2016 WL 2622377, at *2 (E.D. Pa. May 9, 2016); *Vullings v. Trans Union, LLC*, 115 F. Supp. 3d 538, 541 (E.D. Pa. 2015).

[39] 15 U.S.C. § 1681s-2(b)(1).

[40] *Krajewski v. Am. Honda Fin. Corp.*, 557 F. Supp. 2d 596, 609 (E.D. Pa. 2008) (quoting *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir.2004)). *See also SimmsParris v. Countrywide Fin.Corp.*, 652 F.3d 355, 359 (3d Cir. 2011).

[41] *See Parker v. Nationstar Mortgage LLC*, No. 15-874, 2015 WL 6472223, at *7 (W.D. Pa. Oct. 27, 2015); *Martin v. Covergent Outsourcing, Inc.* No. 14-377, 2014 WL 866499, at *6 (M.D. Pa. Mar. 5, 2014); *Paredes v. Sallie Mae*, No.11-2470, 2011 WL 5599605, at *6 (D.N.J. Nov. 16, 2011).

[42] 12 U.S.C. § 5491(a); *see also Morgan Drexen, Inc. v. Consumer Financial Protection Bureau*, 979 F. Supp. 2d 104, 107 (D.D.C. 2013), aff'd 785 F.3d 684 (D.C. Cir. 2015).

[43] Am. Compl. at ¶ 7.

[44] *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (citing to Fed. R. Civ. P. 15(a)).

[45] *Id.*; *see also Shine v. Bayonne Bd. of Educ.*, 633 F. App'x 820, 822 (3d Cir. 2015); *U.S. ex rel. Schumann v. Astrazeneca Pharm. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014).

[46] *See supra* note 42.

[47] *See Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983) (holding a trial court may properly deny leave to amend when the amendment would not withstand a motion to dismiss).

[48] Am. Compl. at ¶ 7.